UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-24724-CIV-ALTONAGA/Reid

**ENRIQUE ALVEAR**,

    Plaintiff,
v.

**MOISES BAKERY OF MIAMI, INC.**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** came before the Court on Plaintiff Enrique Alvear's Motion for Default Final Judgment [ECF No. 10]. The Court has carefully considered the Motion, the record, and applicable law. For the following reasons, the Motion is granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Enrique Alvear is a blind person medically diagnosed with blindness as a result of retinal detachment to both eyes. (*See* Compl. ¶¶ 4–5). Because of his condition, Plaintiff is completely blind and is substantially limited in performing one or more major life activities, including sight, accurately visualizing his world, and adequately traversing obstacles. (*See id.*). Plaintiff's visual disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer. (*See id.* ¶ 8).

Because he is blind, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. (*See id.* ¶ 6). Screen reader software translates the visual internet into an auditory equivalent. (*See id.*). At a rapid pace, the software reads the content of a webpage to the user. (*See id.*).

> The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory — rather than visual — cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word "clickable.". . .Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard.

(*Id.* (alteration added; quoting *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 374 (E.D.N.Y. 2017))).

Defendant is a Florida for-profit corporation and does business in the State of Florida. (*See id.* ¶ 7). Defendant owns, operates, and/or controls two bakeries/restaurants selling a range of foods and baked goods, including one of the bakeries/restaurants Plaintiff intended to patronize in the near future, located at 7310 Collins Avenue, in Miami Beach, Florida. (*See id.*). Defendant is an organization that owns, operates, and/or controls two bakeries/restaurants selling a range of food and beverage products, as well as baked goods, under the name "Moises Bakery." (*See id.* ¶ 10). Each Moises bakery/restaurant is open to the public. (*See id.*).

Defendant also owns, controls, maintains, operates, and is directly linked to and benefits from a "Website." (*See id.* ¶ 12). One of the functions of the Website is to provide the public information on the locations of Defendant's bakeries/restaurants. (*See id.*). Defendant also sells to the public its food and beverage products (including baked goods) through the Website. (*See id.*). The Website acts as a critical point of sale and ordering for Defendant's food and beverage products made in and available for purchase in, from, and through Defendant's physical bakeries/restaurants. (*See id.*). In addition, the Website allows the public to order and purchase products online and arrange for in-bakery/restaurant pickups or home deliveries of products, as well as submit forms for placing catering and/or cake orders and sign up for a rewards program to

receive exclusive online offers, benefits, invitations, and discounts for use online and in the physical bakeries. (*See id.*). The Website services Defendant's physical bakeries/restaurants by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers. (*See id.* ¶ 13).

Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize in the near future, once the Website's access barriers are removed or remedied, one or more of Defendant's physical bakeries/restaurants (including the store in Miami Beach, Florida), and to use the Website's functionalities. (*See id.* ¶ 17). The Website functions are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. (*See id.* ¶ 18). Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software. (*See id.*).

Plaintiff accesses a number of websites at a time to help plan his bakery/restaurant visits and to compare food and beverage offerings, prices, services, sales, discounts, and promotions. (*See id.* ¶ 19). Plaintiff may look at several websites to compare features, discounts, services, promotions, and prices. (*See id.*).

Beginning in October 2023, Plaintiff attempted on a number of occasions to utilize the Website to browse through the food and beverage offerings and online offers to educate himself as to the food and beverage products, as well as baked goods, sales, services, discounts, and promotions being offered, learn about the brick-and-mortar bakeries/restaurants, check bakery/restaurant hours, and check food and beverage product pricing, as well as that of the baked goods, with the intent to make a purchase through the Website or in and from one of the physical bakeries/restaurants. (*See id.* ¶ 20). However, Defendant's Website contains access barriers that

prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. (*See id.* ¶ 21). These access barriers are pervasive, one or more of which were experienced by Plaintiff, and as confirmed by Plaintiff's expert, include the following:

(a) unannounced text present on the images on the "Specials" page. For example, the "Berlin" donut included text regarding its availability along with three available filling options, however, all of this content went unannounced; only "Berlin" was announced;

(b) an "Order Online" graphic link on the home page that was not clearly labeled; instead, a long and incomprehensible label was announced. The screen capture shows the full announcement, but an abridged version is, "main landmark, 9 numbers, underscore, 17 numbers, underscore, 18 numbers, underscore, o, left parens, 1, right parens, graphic order online link";

(c) an inaccessible "date picker" that is displayed on the catering form, which is supposed to help users find and select a date; it was not announced when displayed and a user of screen reader software could not access it using arrow or tab key navigation;

(d) a home page carousel that began to rotate automatically, but that did not have buttons available for purposes of hiding, stopping, or pausing it;

(e) the lack of a "Skip to Main content" link throughout the Website;

(f) a keyboard focus order that did not work sequentially; focus went to the elements present on the catering form only after navigating through all the other links present on the page, including the footer links. The footer indicates the end of the page and so a user of screen reader software had no reason to continue to navigate past them;

    (g)    multiple links, such as the "Order Online" links on the "Order Online" page, which redirected a user of screen reader software to a third-party website that opened up in a new tab when it was selected; a user of screen reader software, however, was not notified as is required. The "How can I Help you?" button at the bottom of the screen, as well as all of the job links, also had this same issue;

    (h)    a contrast ratio for the error message text with the background present on catering form of 3.9:1, which is less than 4.5:1; a low vision user of screen reader software would face issues detecting the text given the contrast ratio was less than 4.5:1; and

    (i)    in the home page carousel, images with embedded text that did not have any of their text content announced and that also had unnavigable text content.

(*See id.*). These access barriers were independently confirmed by Plaintiff's expert, ADASure, in November 2023. (*See id.* ¶ 55).

Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Website that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties communicating with, the Website. (*See id.* ¶ 22). The Website did appear to have an "accessibility" statement included at the bottom of the home page with a phone number for disabled individuals having "difficulty viewing or navigating the content" on the Website. (*Id.*). But that "accessibility" statement and the provided phone number, which were tested, continued to be a barrier to and did not provide a viable alternative to access and navigate the Website for blind and visually disabled persons, including Plaintiff. (*See id.*). Plaintiff thus was unable to receive any meaningful or prompt assistance to enable him to navigate the Website equally, quickly, fully, and effectively. (*See id.*).

The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping and dining experience, with the same

access to the food and beverage products, sales, services, discounts, and promotions, as provided at the Website and in the physical bakeries/restaurants as the non-visually disabled public. (*See id.* ¶ 23).

Plaintiff desires and intends in the near future — once the Website's access barriers are removed or remedied — to patronize one or more of Defendant's physical bakeries/restaurants and to use the Website, but he is presently unable to do so as he cannot effectively communicate with Defendant due to his blindness and the Website's access barriers. (*See id.* ¶ 24).

On December 13, 2023, Plaintiff filed the Complaint [ECF No. 1], asserting one claim against Defendant for violation of the Americans with Disabilities Act. (*See generally id.*). On January 18, 2024, the Clerk entered a Default against Defendant Moises Bakery of Miami, Inc. [ECF No. 8] after it failed to respond to the Complaint within the allotted time. (*See* Proof of Service [ECF No. 4] (affirming Defendant was served on December 22, 2023)); Fed. R. Civ. P. 12(a)(1)(A). Now, Plaintiff moves for default final judgment on his ADA claim. (*See generally* Mot.).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. *See* Fed. R. Civ. P. 55(b)(2). The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the Complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-61123-Civ, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)).

But a defendant's default "does not in itself warrant . . . entering a default judgment." *Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-81271-Civ, 2015 WL 1782241, at *1 (S.D. Fla. Mar. 24, 2015) (alteration in original; quotation marks omitted; quoting *Nishimatsu Constr. Co. v.*

CASE NO. 23-24724-CIV-ALTONAGA/Reid

*Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered.  *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint[] and is therefore established by the entry of default[.]" (alterations added; citation omitted)).

### III.  DISCUSSION

#### I.  The ADA Claim

The ADA prohibits discrimination by public accommodations, providing that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a) (alteration added).  To state an ADA claim, a plaintiff must allege (1) he is a disabled individual; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff within the meaning of the ADA.  *See Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12182(a)).

Upon review of the record, the Court finds the Complaint adequately establishes subject matter jurisdiction under 28 U.S.C. section 1331; and, taking the Complaint's allegations as true, sufficiently pleads an ADA violation.  Plaintiff sufficiently alleges he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. section 12101 ("ADAAA").  (*See* Compl. ¶ 5).  Likewise, Plaintiff sufficiently alleges Defendant owns, operates, and/or controls a place of "public accommodation" within the meaning of the ADA: Defendant is a private entity which owns, operates, and/or controls a bakery, grocery store, clothing store, hardware store, shopping

7

center, or other sales or rental establishment, under 42 U.S.C. section 12181(7)(E) and 28 C.F.R. section 36.104. Plaintiff also sufficiently alleges the Website is a necessary service and privilege of Defendant's physical bakeries/restaurants in that, as a critical point of sale and ordering for the bakeries/restaurants, it enables users of the Website to make online purchases of Defendant's food and beverage products, as well as its baked goods, that are made in and available for purchase in, from, and through the physical bakeries/restaurants. (*See* Compl. ¶ 14).

The ADA covers both tangible and "intangible" accessibility barriers. *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1283 (11th Cir. 2002) (citing 42 U.S.C. §§ 12182(b)(2)(A)(i)–(ii), (iv)). Courts have concluded that websites can serve as an "intangible barrier" to a disabled person's ability to enjoy a defendant's physical location, resulting in the plaintiff "'being excluded, denied services, segregated, or otherwise treated differently.'" *Fernandez v. Flanigan's Enters., Inc.*, No. 23-80073-Civ, 2023 WL 4285317, at *3 (S.D. Fla. June 29, 2023) (quoting *Fernandez v. Bruno Northfleet, Inc.*, 568 F. Supp. 3d 1294 (S.D. Fla. Oct. 18, 2021) (denying motion to dismiss website ADA claim where website acted as "intangible barrier" to, among other things, purchasing the defendant's merchandise available at the physical store)); *see also Ariza v. Coffee Beanery, Ltd.*, No. 22-61616-Civ, 2022 WL 17333106, at *5 (S.D. Fla. Nov. 29, 2022) (same). This is especially true where a company's website acts as a point of sale for the company's merchandise that is also available in the company's physical locations. *See Flanigan's Enters., Inc.*, 2023 WL 4285317, at *3; *Northfleet*, 568 F. Supp. 3d at 1298–99.

Under the ADA, discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services[.]" 42 U.S.C. § 12182(b)(2)(A)(iii) (alteration added). "[S]creen reader software" is an example of

an auxiliary aid or service for "individuals who are blind or have low vision." 28 C.F.R. § 36.303(b)(2) (alteration added).

Similar to the websites that were at issue in *Flanigan's* and *Coffee Beanery*, Defendant's Website acts as a point of sale for Defendant's food and beverage products available in and from its physical bakeries/restaurants. (*See* Compl. ¶¶ 12, 13, 14, 15, 25, 49). Further, Defendant's Website is inaccessible to blind and visually disabled individuals such as Plaintiff, who must use screen reader software to successfully access and navigate the Website. (*See id.* ¶¶ 19–22, 24, 26-33, 35–37). Thus, the inaccessibility of the Website creates an "intangible barrier" to Plaintiff, as a visually disabled person, to full and equal access to and enjoyment of the goods, services, facilities, privileges, and advantages that Defendant offers its sighted customers in and through its physical bakeries/restaurants.

Finally, Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged; and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Website's access and operation. (*See id.* ¶ 43).

Accordingly, there is sufficient basis in the Complaint for the Court to enter final default judgment against Defendant.

**II.     Plaintiff's Attorney's Fees, Costs, and Expert Expense**

Plaintiff also requests his reasonable attorney's fees and costs. (*See* Mot. 13–25). The Court uses its discretion to decide costs and attorney's fees after the resolution of any appeal or motion for reconsideration, if one is filed. *See Belize Telecom, Ltd. v. Gov. of Belize*, 528 F.3d 1298, 1310 (11th Cir. 2008) ("[W]e leave for the district court to determine whether a stay or a hearing on costs and fees is appropriate, given the pending appeal . . . ." (alterations added)).

9

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff Enrique Alvear's Motion for Entry of Final Default Judgment **[ECF No. 10]** is **GRANTED in part** and **DENIED in part**.  Plaintiff is entitled to default final judgment on his ADA claim in Count I of the Complaint.  Final judgment and declaratory and injunctive relief shall be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 20th day of February, 2024.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record